**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-13568

Non-Argument Calendar

————————————

MAXIE O'NEAL PRICE, III,

*Plaintiff-Appellant,*

*versus*

CHICAGO TITLE INSURANCE COMPANY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-01489-LMM

————————————

Before JORDAN, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Maxie O'Neal Price, III appeals from the district court's grant of summary judgment in favor of Chicago Title Insurance Company and its denial of Price's motion for summary judgment.

Price brought this suit when Chicago Title denied him title insurance coverage for a claim arising out of a dispute between Price and his neighbors over an alleged easement on Price's property (the "Dimos' Complaint"). On appeal, Price argues that: (1) the district court erred in holding that the title insurance commitment (the "Commitment") entered into before the title insurance policy (the "Policy") barred coverage of his claim; (2) the court erred in treating the allegations in the Dimos' Complaint as determinative that his title insurance claim was excluded from coverage; and (3) the court erred in holding that Chicago Title could not be liable for bad faith damages. After careful review, we affirm.

I.

The background and undisputed facts, for purposes of summary judgment, are these. In April 2018, Price purchased property located on a peninsula that extends into Lake Lanier, in Georgia. On the same peninsula, Cidmon and Robert Dimo ("the Dimos") owned property adjacent to Price's, but unlike Price's property, the Dimos' property was not accessible from a public road. Thus, the Dimos used a 10-to-12-foot-wide gravel road located on Price's property to access their property.

When Price purchased his property, his lender required him to purchase title insurance, and Price agreed to procure it from Chicago Title. Before Price closed on purchasing his property, Chicago Title's policy issuing agent prepared a "Commitment," which Price was aware of but did not recall seeing before the closing. In

that document, Chicago Title committed to issuing a title insurance policy "according to the terms and provisions of [the] Commitment." The Commitment listed Chicago Title's obligations and requirements that Price had to satisfy to receive the Policy, and it contained exceptions excluding coverage for certain covenants, easements, defects, and rights disputes. One relevant exclusion was for "[a]ll matters affecting caption property as shown on plat recorded in . . . Plat Book 847, page 119, . . . Hall County records."

Price complied with the Commitment's requirements, and Chicago Title's agent issued the Policy to Price. The Policy obligated Chicago Title to insure Price "against actual loss, including any costs, attorneys' fees and expenses," but included a list of exclusions that was broader, in relevant part, than those in the Commitment. In particular, the Policy excluded: "loss, costs, attorneys' fees, and expenses resulting from: . . . Covenants, conditions, restrictions, *easements* and/or servitudes." (Citation modified).

In April 2020, the Dimos filed their lawsuit against Price, alleging that they held a 50-foot-wide easement over Taylor Lane, where the gravel road was located. In response to the Dimos' Complaint, Price argued that the Dimos' easement rights were limited to the width of the gravel portion of Taylor Lane and that the easement was not 50-feet in width. Price submitted a notice of claim to Chicago Title concerning the Dimos' lawsuit, but Chicago Title denied that Price's claim was covered, citing the Policy's exclusion from coverage incidents dealing with "[c]ovenants, conditions, restrictions, easements and/or servitudes." In November

2022, the court in the Dimos' lawsuit entered judgment, establishing that the Dimos had a 30-foot-wide-easement over Taylor Lane, and this judgment was later affirmed on appeal.

After judgment was entered, Price contacted Chicago Title and said that, based on the terms of the Commitment, he should have been afforded coverage for the Dimos' Complaint and that Chicago Title was liable to him for the costs and attorneys' fees he incurred during the litigation. Again, Chicago Title denied Price's claim, relying on the exceptions in the Policy. Price sent a demand to Chicago Title, seeking reformation of the Policy to conform to the terms of the Commitment; Chicago Title rejected this demand.

Price then filed this action seeking damages for Chicago Title's breach of its obligation pursuant to the Commitment to issue a policy in accordance with the terms of the Commitment (Count I), equitable reformation of the Policy to conform with the Commitment and breach of the reformed Policy (Count II), damages pursuant to O.C.G.A. § 33-4-6 (Count III), and attorneys' fees and costs (Count IV). Price and Chicago Title filed cross-motions for summary judgment as to all counts of the complaint. In support of his motion for summary judgment, Price argued, inter alia, that the Commitment was a controlling, enforceable contract that Chicago Title breached and that, alternatively, the Policy should be reformed to reflect the terms of the Commitment. Chicago Title, in opposing Price's motion, responded that the Commitment was not an enforceable agreement, that Chicago Title did not breach any terms of the Commitment or the Policy, that the Commitment

merged into the Policy and was superseded by it, and that equitable reformation of the Policy to incorporate the terms of the Commitment was unwarranted.  Chicago Title also cross-moved for summary judgment, arguing, inter alia, that even assuming the Commitment was an enforceable contract, its terms precluded coverage.  In opposing Chicago Title's motion, Price reiterated that the Policy should be reformed to the same coverage provided in the Commitment, that the Commitment did not preclude coverage for his claim, and the Commitment was an enforceable contract that Chicago Title breached.

The district court granted Chicago Title's motion for summary judgment and denied Price's motion.  The court held that the terms of the Commitment controlled Chicago Title's coverage obligations but nonetheless found that its terms precluded coverage.  In support of this finding, the district court held that coverage was determined by the allegations in the Dimos' Complaint and that the Commitment unambiguously excluded coverage for "any matter related to the . . . 'Patton Plat' and 'Plat Book 847, page 119.'"  The court added that because it "determined that the terms of the Commitment control but still do not provide coverage," Price's claim for reformation failed.  It also rejected Price's bad faith claim.

This timely appeal follows.

## II.

We review *de novo* a ruling on a motion for summary judgment, applying the same standard as the district court.  *Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co.*, 320 F.3d 1260, 1267 (11th

Cir. 2003).  Summary judgment is appropriate if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *United States ex rel. Phalp v. Lincare Holdings, Inc.*, 857 F.3d 1148, 1153 (11th Cir. 2017); Fed. R. Civ. P. 56(a).  A "material" fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

We may affirm the judgment of the district court on any ground supported by the record, "regardless of whether that ground was relied upon or even considered by the district court." *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).  Likewise, "[a]n appellee may, without cross-appealing, urge in support of a result that has been appealed by the other party any ground leading to the same result, even if that ground is inconsistent with the district court's reasoning." *Sanchez-Velasco v. Sec'y, Dep't of Corr.*, 287 F.3d 1015, 1026 (11th Cir. 2002); *accord Blum v. Bacon*, 457 U.S. 132, 137 n.5 (1982) ("It is well accepted . . . that without filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below.").  A party abandons a claim on appeal when he "either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

"[T]itle insurance protects a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes his title." *Old Republic Nat'l Title Ins. Co. v. RM Kids, LLC*, 835 S.E.2d 21, 25 (Ga. App. 2019) (citation modified). Because the title insurance at issue here was entered into in Georgia and insures property located in Georgia, Georgia law applies to both the Policy and the Commitment. *Cont'l Cas. Co. v. Winder Lab'ys. LLC*, 73 F.4th 934, 940 (11th Cir. 2023) (substantive law of Georgia applies in federal action based on diversity jurisdiction). Under Georgia law, a title insurance policy is like any other contract, "the construction and interpretation of which involve questions of law for the court." *Old Republic*, 835 S.E.2d at 25. Thus, a policy exclusion that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured. *Cont'l Cas.*, 73 F.4th at 941.

### III.

We are unpersuaded by Price's argument that the district court erred in concluding, on summary judgment, that he was not entitled to title insurance coverage for his claim arising out of the Dimos' Complaint. Notably, both Price and Chicago Title appear to agree that the Policy excluded his claim. Instead, Price argues that the Commitment for title insurance he entered into *before the Policy* covers his claim. We disagree.

For starters, once Chicago Title issued the Policy, the Policy became the only contract between the parties. Under Georgia law, when two parties reach an agreement and later enter into a second

contract covering the same subject, the second contract supersedes and extinguishes the prior agreement, which "merges" into the second contract. *Health Serv. Ctrs., Inc. v. Boddy*, 359 S.E.2d 659, 661 (Ga. 1987); *Hennessy v. Woodruff*, 82 S.E.2d 859, 861–62 (Ga. 1954). "The rational basis for the merger rule is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." *Health Serv. Ctrs.*, 359 S.E.2d at 661 (citation modified).

The "merger rule" is particularly relevant in the title insurance context, where a "commitment for title insurance" -- also known as an "insurance binder" -- is often executed to offer proof of temporary insurance at the time of closing until the title policy issues. *CoreVest Am. Fin. Lender LLC v. Stewart Title Guar. Co.*, 854 S.E.2d 381, 383 n.1 (Ga. App. 2021). "A binder . . . is a contract of insurance in praesenti; temporary in its nature, intended to take the place of an ordinary policy until the same can be issued. It is a short method of issuing a temporary policy for the convenience of all parties, to continue, unless sooner canceled, until the execution of a formal policy." *Jourdan v. First Nat'l Ins. Co. of Am.*, 416 S.E.2d 162, 162 (Ga. App. 1992) (citation modified).

Under Georgia law, "[n]o binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond 90 days from its effective date, whichever period is the shorter." OCGA § 33–24–33(b). Georgia courts have applied this provision

to hold that a policy "supersede[s] any temporary binder of coverage which may have existed by virtue of the application." *Green v. Progressive Ins. Co.*, 397 S.E.2d 20, 21 (Ga. App. 1990) (citing OCGA § 33–24–33(b)). We've similarly recognized it as "hornbook insurance law that a binder merges into the subsequently issued policy so that the terms and conditions of the policy, in case of conflict or ambiguity, are controlling." *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1541 (11th Cir. 1990) (citation modified); *see also Wallace v. Bock*, 620 S.E.2d 820, 822 (Ga. 2005) (holding that the principle of merger operates to discharge an existing contract and the conditions contained therein "whenever the parties subsequently enter upon a valid and inconsistent agreement completely covering the subject-matter embraced by the original contract" (citation modified)).

In fact, in this case, Chicago Title and Price expressly agreed that the Policy would replace the Commitment. The Policy provided that:

> 8. THIS POLICY IS THE ENTIRE CONTRACT
>
> This Policy, with any endorsements, is the entire contract between You and Us. To determine the meaning of any part of this Policy, You must read the entire Policy and any endorsements. Any changes to this Policy must be agreed to in writing by Us. Any claim You make against Us must be made under this Policy and is subject to its terms.

Likewise, the Commitment anticipated the Policy's "entire agreement" provision by providing that: "When the Policy is issued, all

liability and obligation under this Commitment will end and the Company's only liability will be under the Policy."

This means that when Chicago Title issued the Policy, it expressly provided the exclusive source of coverage to Price. *Fabian v. Pontikakis*, 759 S.E.2d 295, 299 (Ga. App. 2014) ("[W]hen a contract includes an entire agreement clause, the clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." (citation modified)). Further, because the Policy was the sole source of coverage and because the parties agree that the Policy excepted coverage for easement claims, it provided Price with no coverage for the Dimos' Complaint. Thus, there was no disputed issue of fact concerning whether Price was entitled to coverage under the Policy issued by Chicago Title, and we affirm the district court's grant of summary judgment to Chicago Title on this ground. *Kernel Recs. Oy*, 694 F.3d at 1309.[1]

---

[1] Although the parties fully argued whether the Policy was the operative contract before the district court, the court did not reach this question. Instead, it held that the Commitment was an enforceable contract that excluded the claim at issue. Nevertheless, we may affirm on the ground Chicago Title urges on appeal -- that the Policy was the operative contract -- since "[a]n appellee may, without cross-appealing, urge in support of a result that has been appealed by the other party any ground leading to the same result, even if that ground is inconsistent with the district court's reasoning." *Sanchez-Velasco*, 287 F.3d at 1026; *accord Blum*, 457 U.S. at 137 n.5. This is especially true since the parties "had a full and fair opportunity to develop facts relevant to the decision" in district court and to argue the issue on appeal. *Rozar v. Mullis*, 85 F.3d 556, 564 (11th Cir. 1996) (citation modified).

Moreover, to the extent Price also argued in district court that the Policy should be reformed based on its purported differences with the Commitment, we are unconvinced. Georgia courts have long explained that when a policy does not match the terms of a binder, an insured who "instead of examining and looking at the policy himself, thought it proper to rely upon the representations of the company and [the agent], . . . has no one to blame for his credulity but himself." *Fort Valley Coca-Cola Bottling Co. v. Lumbermen's Mut. Cas. Co.*, 24 S.E.2d 846, 851 (Ga. App. 1943). So, where a "policy does not conform to the previous agreement the applicant may refuse to accept it, and recover back any money he may have paid in the premiums; or if he has accepted it, supposing it to conform to his contract with the insurer, a court of equity will reform it in a proper case." *Id.* at 850.

Seeking to invoke the district court's equitable power, Price urged the court to reform the Policy to correct its mismatch with the Commitment that was "the result of a mistake." Under Georgia law, where reformation is sought on the ground of mistake, "equity will not reform a written contract unless the mistake is alleged and proved to be the mistake of *both* parties." *Scurry v. Cook*, 59 S.E.2d 371, 373–74 (Ga. 1950) (denying a reformation claim where "[t]here was possibly some evidence of a mistake on the part of *one* party to the contract") (citation modified); *accord First Chatham Bank v. Liberty Cap., LLC*, 755 S.E.2d 219, 223–24 (Ga. App. 2014); *First Nat'l Bank of Polk County v. Carr*, 579 S.E.2d 863, 864–65 (Ga. App. 2003). "[T]he burden on the party attempting to prove

mutual mistake is a heavy one," and "the evidence of mutual mistake must be clear, unequivocal, and decisive" to obtain reformation. *First Chatham Bank*, 755 S.E.2d at 224 (citation modified).

On the record before us, Price could not establish a disputed issue of fact that both parties made a mutual mistake. Indeed, in his opening brief on appeal, Price does not even argue that the Policy should be reformed to include the terms of the Commitment. And, in his reply brief, he says only: "Given the District Court holding (with which Mr. Price agrees) that Commitment governs Chicago Title's obligations, it is not necessary to address Chicago Title's argument concerning reformation." In declining to argue this issue on appeal, he has abandoned it. *Sapuppo*, 739 F.3d at 681; *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (affirming on a ground not addressed by the district court where the defendant argued for dismissal based on that ground in district court and on appeal, but the plaintiff "for whatever reason, chose not to respond to it"). In any event, Price cannot show a mutual mistake. At best, he alleges a unilateral mistake, which will not support reformation. *Scurry*, 59 S.E.2d at 373–74.

Price has not shown that the district court erred in concluding that he was not entitled to title insurance coverage pursuant to its contract with Chicago Title. We affirm the court's order granting summary judgment in favor of Chicago Title.

**AFFIRMED.**